Your Honor, the first call of the afternoon, call the case of the afternoon, call 212-807 People's State of Illinois v. Katarzyna G. On behalf of the Avalon, Ms. Ann Krasuski. On behalf of the Athlete, Ms. Ann Campbell. Thank you. Ms. Krasuski, you step forward please. Justice Enoff is the third panelist. She couldn't be here this afternoon, but she will review the oral argument. She's given us her request relative to questions that she might have wanted to ask. You may proceed. Thank you. May it please the court, counsel. Ma'am, would you move into the middle of the podium? I like symmetry. But really what it is, is you're going to speak into the microphone. Thank you. Ann Krasuski with the Illinois Guardianship and Advocacy Commission, court appointed counsel for respondent appellant Ms. Katarzyna G. Your Honors, this case is about whether people with mental illnesses in Illinois who are not proficient in English, have a due process right, like English speakers, to receive written information about psychotropic medications in a language they can understand. Does the language barrier mean that they should not have medication information that they can read, and that will aid them in making a reasoned decision whether to take the medication? Is there any question that your client was able to speak and understand English? No, the record does not show. The record shows she had an interpreter in court, an interpreter when talking to the doctor, and an interpreter when talking with her attorney. Just to go back up for a moment, she doesn't have a due process right to the written warning. The warning is there to ensure that her due process rights are protected, correct? Yes, that's how the case is phrased. In terms of Justice Clarence's question, what was her level of understanding of English? The record does not indicate that she spoke or understood English at all. There isn't an indication in the record, and the state did not challenge that point. I'm sorry, finish. I was going to say what we have in the record is that she needed an interpreter to communicate with her psychiatrist and her attorney and to understand the proceedings. So would it be safe to say that the record doesn't reflect that she ever spoke English? Yes, I would agree that's safe to say. In spite of her need for an interpreter, her psychiatrist did not give her the medication information in Polish, and the record shows that she did not, in fact, fully understand the medication information. She said it was to make her happy, and that is indeed what the doctor had told her. The doctor testified, that's how she described the medication to her. When the doctor testified, she described other benefits, including a decrease in paranoia and delusions. The medications treat mood globility, irritability, and the medications could help her work her way out of algin. So the listener will know there was an issue of mootness because she has been discharged, is that correct? There is an issue of mootness because this order has expired. But both you and the state are contending that we should address the issue under the exception? That's correct. The state agrees that two mootness exceptions apply. I argue that all three of them apply. But in any case, there is agreement on the two, and the court could decide this matter under the public interest exception, which the appellate court has done regarding issues about the written information under section 2-102. And this is likely to arise again? Yes, it's definitely likely to arise again for other respondents because as the Illinois legislature recognized, the diversity in Illinois is growing. And so hospitals are likely to have more and more patients who speak languages other than English. So it is definitely an issue that can reoccur. How about addressing the state's argument of substantial compliance because there's no question that there was an interpreter who did review the English written version with the respondent, correct? Well, there isn't evidence that the interpreter actually did review the information. I think the representation was that the interpreter would be reviewing it with her, correct? Ms. G said, I will go over the written information with the interpreter who's coming. The doctor testified that she did not know whether the interpreter did that, whether Ms. G met with the interpreter, whether that occurred. But even had it occurred, that does not comply with section 2-102. That section requires the information to be in writing. An interpreter provides verbal information. And the court, the appellate court has held verbal notice of the medications is insufficient to comply with the code. Do you speak Polish? Yes, I do. Because your last name ends in an I, which usually means you're Polish as opposed to Russian, which ends in a Y. That's my understanding, yes. Okay. Have you ever conversed with your client in Polish? Yes. When I talk with her, I speak to her in Polish. And has she ever talked to you in English? No. Have you ever talked to her in English? No. Okay. Now, had Ms. G received the written information in Polish, she would have had complete information about the benefits and side effects and risks and alternatives. Instead, she was given the information in English with access to an interpreter, as the state puts it, access to an interpreter. And, again, that is not sufficient, even had she met with the interpreter, because the information must be in writing. And it must be in writing to the extent that the medication advice is consistent with the recipient's ability to understand the information. And the Mental Health Code recognizes that people may have different levels of understanding, whether it's due to their symptoms of mental illness, whether perhaps it's their level of reading comprehension, or their limited English proficiency. And the Code does require that the information be consistent with the recipient's ability to understand it. And, again, if this Court were to accept the state's argument that an interpreter is sufficient, then there would be no need to provide written information to English speakers. It could be verbal information. And then that section of the Code, Section 2-102, would be superfluous. The written information requirement is a necessary element of... Whose burden do you think it is to establish prejudice? Prejudice is not relevant. The respondent does not need to show prejudice. Well, in a way, what I'm getting at is, let's assume that she's bilingual, but she predominantly speaks or prefers to speak Polish. But she has been known to speak English, and she has used it. And if she were asked questions in English, she'd be able to respond in English. So how is it that she would establish prejudice? Is it presumed? Are you claiming that it's presumptive? Well, the case law doesn't state that directly. The case law says that it's not an issue because if a person does not have complete written medication information, they cannot make a decision. They are not fully informed to make a decision about the medication. It's a requirement that has to be proven by the State, by clear and convincing evidence, that there was actually written notification in a language that the respondent understood. The State must prove that the respondent was given the information. The State doesn't have to prove that the respondent actually understood it, but that the information was provided in a form that's consistent with the respondent's ability to understand it. So there's no requirement that the respondent has to understand it. So once the facility fulfills its obligation, it's complied with that section. And in that case, the question of how much English she spoke, whether even if she spoke conversational English really well, does that mean she could understand medical terminology well enough to comply with the code? That wouldn't arise. There's no evidence in the record of that anyway, though. That's correct. There's no evidence in the record that she could speak or understand either spoken or written English, correct? That's correct. That's not in the record. And not only is the written information, it's a necessary element that the State must prove with clear and convincing evidence, because the State must prove that the respondent lacked capacity to make a reasoned decision about the medication. And without that medication information, if a respondent does not have that medication information in writing, the State cannot prove that. But also, it's necessary to comply with the code to protect the respondent's due process rights. And there are other practical benefits. If a respondent who has complete written information may be more likely to consent to treatment voluntarily, and that is preferred under the code, voluntary treatment, people may not agree to something that they do not understand. If a person has written information, the person could share that with friends and family and have a discussion with people close to her to help her make the decision. Did you object or did the trial attorney object to this defect below? The trial attorney argued that the State didn't prove Ms. G lacked capacity. But specifically saying that the written information was insufficient, he didn't raise that specifically. If the objection wasn't raised, how could the State have accommodated your client such that this wouldn't be deemed to be a procedural default? Well, had the objection been raised, he raised it in argument. I'm not sure I'm following the question. Well, you said that I'm saying that there should have been an objection that the written instructions were not given to her in Polish so that there could be compliance with the statute. And then you said something about there was objection that she didn't understand it or needed it. And I'm not convinced that that's the same argument or the same objection. Well, even if it isn't, the case law does not mention objections by trial attorneys to the sufficiency of the written information. So this can be raised for the first time on review? Yes. This defect? Yes. And that's how it is in the case law. The appellate court has required strict compliance. The appellate court has said it's not subject to a harmless error analysis. And the appellate court disagreed with the State that the respondent must show prejudice. Well, the fact that you can't or we can't ascribe harmless error doesn't mean that constitutional, as the question was raised, or whether or not it's a statutory right has been raised can be waived. So if it's not raised below, how is it that you can raise it now? There is a case that says it cannot be waived. It's a right that cannot be waived. And even when, as I said earlier, the information is provided verbally, if it's not in writing, the order will be reversed. See, my point is if there had been objection raised at the time in the trial court, then the trial court could have said, okay, we'll continue the matter, and I'll appoint the interpreter to translate the document from English into Polish and then submit it to her, and she can review it, and then maybe if she has any questions, she can, you know, present them to the interpreter, or they can be raised with their lawyer, if their lawyer speaks, you know, her native tongue. It puts the trial court in the untenable position of not being able to cure a defect and have the proceedings proceed in an economical, plane-speeding, efficient way. If I may respond. You can continue. The burden is on the State's attorney to prove all of the elements, not on the defense attorney. And had the defense attorney... So you're saying this is an element of the proofs necessary? Yes, exactly. Would you enter an order imposing some sort of medical treatment that the witness or the client doesn't want? I'm not sure I understand the question. Well... But, yes, in an involuntary medication order... You're saying under the case law, including Nicholson from this court, it's a matter of strict compliance. It is an element of the State's proofs, and the defendant doesn't have to object. He can raise it on appeal. Yes, exactly. So even if there had been a Polish document explaining all these things, but the record doesn't reflect that it was presented because nobody submitted it in evidence, that would be a patently, presumptively reversible defect. Yes, there must be clear and convincing evidence, which is simply someone's testimony that that information was provided. It does not need to be in the record. Any other questions? Thank you. You'll have an opportunity to make the vote. Thank you. Good afternoon, Your Honors. Ms. Campbell, let me just make a record so that the listener knows that it's Diane Campbell. Correct, Your Honor. Appearing before the court. On behalf of the people. The first, I have a brief comment about the moodness. The respondent was found not guilty by reason of insanity of aggravated battery of a police officer. Her initial sentence was for outpatient treatment. She was not in compliance with that because she did not take her medications, which is how she ended up as an inpatient in Elgin. And her theme or ultimate release date is 2018. So this is something that's capable of repetition, and we agree that it's a public interest argument. I'm going to address first the waiver reversible error aspect, and then I'll go into the statutory compliance. The state asserts that this is, in fact, strict compliance. There's no argument by my opposing counsel that, in fact, the Dr. Jordan gave the respondent written information regarding the medications. The only argument here is whether it was sufficient that it was not in Polish language. Do you agree with, just so we all are clear, there's no question that the respondent did not read or understand English? I believe that's the only reference you can draw from the record. The doctor stated that she did some of the therapy with the respondent in Polish. The trial court appointed an interpreter for the proceedings and for her contact with her attorney. There's no evidence on the record that she spoke in English at the proceedings. So I think the only logical reference is that she, in fact, needed a Polish interpreter. And so, well, to make it maybe shorten it a little bit, you also agree that this is not an issue where a waiver or forfeiture would apply? I very much disagree with that. You disagree? Yes. What is your argument? I was just getting to that. Here we have, as Justice McLaren pointed out, if an objection was raised, it could be provided with a continuance. In this case, the case first appeared on 6-15. And at that point, in the record on page 3, the counsel indicates she consulted with her client. A continuance was sought and secured. And at the end, counsel indicates she's going to consult with her client after the proceeding. That's at page 4. On page 10, when we start the hearing, defense or the counsel indicates that she has consulted with her client. That's on page 10. And at the same time, counsel says it's asked if there are any issues for notice or waiver. That would have been the opportunity to raise this issue. So she has, in fact, waived it at this point. I cited to Tiffany K., or sorry, Tiffany W., in my brief. And that would have... Counsel, could we go back to your statement that this is a waiver? We've been told by, I believe, Justice Freeman more than once that a waiver is a voluntary relinquishment of a known right, as opposed to a procedural default, which is a failure to do something that, had you done, it would have given either the trial court and or the opposing party the opportunity to remedy what the defect was that you're now claiming constitutes reversible error. And it's been suggested that's unfair and that nobody should take advantage of their silence when, had they spoken out, the remedy or the relief that they're seeking now could have easily been effected at the time. So the new nomenclature is it's a procedural default and not a waiver. I would argue... A waiver would have been, the judge said to them, was the notification in English sufficient to give this individual an understanding of what it was that she was going or giving up or whatever? And the answer was, yes, it was sufficient, Judge. I think that might be deemed to be a waiver and not a procedural default. I would still argue, well, accepting forfeiture as the backup position, I would still argue in this case because of the particular facts that it is a waiver. Because, as I pointed out on page 10, counsel is asked if there are any issues regarding notice or timeliness. And then later in her closing argument, when she's arguing capacity, I quote this on page 5 of my brief, and it's in the record at page 67. Counsel's argument is that she's aware of what these medications are for, why they're administered to people. Then she proceeds with, she has an understanding of what they're used for, and she also has an understanding they could have an adverse side effect. I think that is, in fact, waiver of any argument that she needed to be provided the medications in Polish. Her counsel is stating that she, specifically on the record, that this respondent understands these medications. Did she waive the statutory right to written notice? No. She, in fact, received strict compliance with the statute because she received written notice of the medications. The whole argument here is whether it's sufficient if she's given that in English with an interpreter or if the state is compelled to give that in Polish. And our argument is that the state is not required to give it in Polish. That's contrary to the plain and ordinary meaning of the statute. The statute says, in a language written, in a language that she understands. Written in a language that she understands. You're asking us to rewrite the provision? I don't believe so. I've got three statutory citations I'd like to reference, and I think if we look at those in conjunction, we'll see that, in fact, this is the appropriate procedure that occurred here. The first counsel has these underpinnings. Well, let me interrupt you from your lucid chain of thought and follow up on what Justice Burkett is suggesting, which is it's obvious error, but based upon what you just read us from page 10, there's no prejudice. I agree that there's certainly no prejudice, but, again, I disagree that there's obvious error. Counsel puts two of the statute sections on page one of her brief. The first is 2-201A5, and that says, if services include psychotropic medications, the information is to be given to the extent such advice is consistent with the respondent's ability to understand the information communicated. That's the first sentence. The last sentence of that paragraph is that, if the respondent is unable to communicate effectively in English, the facility shall make reasonable efforts to provide services to the respondent in a language that the respondent understands. And the next statutory section is 3-204, and that states, whenever the statement or explanation required be given to the respondent and the respondent does not read or understand English, such statement or explanation shall be provided in language which he understands. Then they exclude the petition and court orders. And then the third provision, which is the Language Assistance Services Act. Respondent cites to this on page four of her brief. The citation is on page five. There's a minor typo in that. She's left off the last digit. So the citation is 210-ILCS-87-5. And that states that it's the intent of the legislature where language or communication barrier exists between the patient and the staff. Arrangements shall be made for interpreters or bilingual staff to ensure adequate and speedy communications. And that is a statute that was effective in 2013, so that's the latest report from our legislature. And that emphasizes the use of interpreters, and that's part of the reason why the provision of the written information with access to the interpreter is statutorily sufficient. And, in fact, there was strict compliance, I would argue. I don't quite understand what relief you're seeking. I would ask that you affirm. But if we affirm on the basis that there's waiver, we never really get to the question, which I thought was in everybody's mind, which is, is it Polish or Polish? Should it be in our English? Which is it? I thought we were supposed to decide whether or not it's supposed to be, as Justice Burkett said again. Is it in a language that the person understands? And if we declare anything that is based upon or in response to a part waiver, we could easily say, yes, it should be in Polish. But they waive it. So what have you accomplished? We still affirm, but in a way you haven't won the war to the extent that now there will need to be an army of interpreters to interpret the written documents that are going to be submitted in the native tongue of the particular client. I would be happy if you ignored my waiver argument and went ahead and decided on my statutory interpretation argument. That would be fine with me. Are you telling us then you're withdrawing your waiver argument? No. Okay. This Court is not frequently receptive to waiver arguments. I don't want to speak for my colleagues, but I'm always interested to hear waiver and forfeiture arguments because they should be made. But looking at some of the cases, what case authority do you have for that particular proposition in this context? One of the cases that I'm looking at is the decision in Tiffany W. And in that case, I liked that because it quotes extensively from this Court's decision in Nicholas L. in paragraphs 16 to 19. In both Nicholas L. and in Tiffany, it's factually different because in Nicholas L. the State conceded that there was a lack of written information about the alternatives. And unlike your case in Nicholas L., there was not a specific opportunity given by the trial court for the respondent to object, correct? Correct. And here that opportunity was given. Correct. And in fact, defense counsel argues directly against a lack of comprehension or understanding. But also, the reason I particularly cited Tiffany was because she compares that to now and the decision in that case and says that the sort of pivotal point is whether the purposes of the legislature has been achieved with what's happened with the statute. And clearly that's been achieved here because counsel argues that in fact she understood the medications and she therefore made a reasoned decision to refuse them. Her whole argument is based on her perception, and she has consulted with her client in Polish, that in fact Katarina G. understands the medication. Katarina herself at the hearing said that she had received information regarding the medications. And her whole theme of the testimony is that she understood it, but she believed or she perceived that she was making a rational decision to refuse. Are you aware that asking someone if they understand something is kind of a negative pregnant or an open-ended question? It was probably phrased differently. Do you understand where babies come from? Yes, storks. You need to follow up with the question to find out. They think they understand. So the fact that she says that she understands what these medications do, it would have been beneficial to say, and what do they do? Or did you read the document and you understand English? Or did you have the document explained to you by the interpreter word for word? In other words, your statements, I think they're called anthemes. They are a syllogism that's based upon a premise that's implied or suggested. And I'm suggesting to you that that's what you've done. You've implied that when she says she understands something, she's accurate and correct. She can be blissfully ignorant. She, in fact, is, and there is further testimony in the record that demonstrates that. She is asked why she is refusing them. And her statements are that she can make herself better. First of all, she doesn't believe that she's mentally ill. She doesn't believe her depression is a mental illness. She doesn't believe that she needs medication. Her statements are that she will be able to overcome her depression without aid of any medication. So that is, in fact, you know, they have explored the fact that regardless of whether you give this woman information in Polish or English, she's going to refuse. Her past history demonstrates that. The doctor said she absolutely refuses medication. She's, in fact, ineligent because she was not compliant with her medication orders when she was an outpatient. The problem with your argument, in my mind, is if you've ever watched these ads on TV about how by taking this particular drug, you can now go and run amongst the daisies and whatever, and then for the next 90 seconds, they tell you all the things that your body can fall apart because of taking this drug. So what you just told us was this woman thinks that she doesn't need it. And I thought the reason for the explanation for why you take these drugs or what these drugs are all about is to weigh the benefits vis-a-vis the liabilities. And you didn't say anything about her saying, I understand what these drugs do, and if I take it, you know, my right arm will fall off or my toenails will curl up or my hair will fall out or something like that. And to me, the whole theory behind or concept of giving information about what these drugs are and what they do is to give the client the ability to weigh the benefits versus the burdens. And in your argument, you didn't address that at all. That is an issue raised in our briefs. In fact, in defendant's brief on, I believe, page 7, she argues that what is required is that the respondent be given an opportunity to study the materials at the time and in the manner she chooses. And that is exactly what happened here. She was in, Dr. Jordan testified that she had discussed with the Polish interpreter the alternatives of treatment. And then when she tried to give the respondent the medication information, she refused to discuss it with Dr. Jordan. So Dr. Jordan gave her the written information regarding, and she first tried to refuse it, and then the respondent said, I will go over this with the translator later. And that equates her with an English-speaking, you know, English-language recipient of information. Well, somebody who lacks capacity. If you're an English-speaking... Holding her to that statement or that acknowledgment, she lacks, I mean, that was the determination by the trial court that she did lack capacity to understand. Counsel points out in, I believe, her reply brief that the obligation is to provide her with the opportunity. The state does not force her to read the information. If you were an English speaker and I gave you the information, Dr. Jordan will not pursue you down the hallway and stalk you until you read it. We won't force you to read that information. Dr. Jordan's obligation is fulfilled when she gives it to the respondent and they have the opportunity. And that's what happened here. She gave the respondent the information and the respondent said, I'll go over it with the interpreter. That's as far as Dr. Jordan is allowed to pursue it. She can't force the respondent, she can't monitor those conversations to force or compel, you know, the speech speaker to go over it with her client. So in this case, the whole case law says that what is important is that the respondent be given the opportunity to go over the information at their leisure and in the manner they want. And this is exactly what happened in this case. She's given the medication information and she says she'll go over it with her Polish interpreter. Counsel suggested that you could go on the Internet and get the information. You know, we all know that if it's on the Internet, it's true. So I have some disagreement with that. And in fact, there's more control for the accuracy if you give the information in English because then if the interpreter has a question, Dr. Jordan or a staff member can go over the terms. If it's in Polish, you know, Dr. Jordan is not going to be able to, you know, see if the nuances are correct. Whereas if it's an English copy, you know, she can clarify the nuances. That's all good argument, but the statute is pretty clear on its face. I don't believe so. I believe if you read the three sections that I quoted in conjunction, particularly with the language assistance where they, you know, state about the use of interpreters. Each provision has to be complied with. It's not collectively our fault. Does the written, for example, some other provisions not complied with, then can we rely upon a written in a language that a person understands if they're not otherwise providing translation? I'm not sure I understand that. But the point is that each provision has to be complied with. I believe so. The first section, which is 2-102A5, says that if the respondent is unable to communicate effectively in English, facilities shall make reasonable efforts to provide services to the respondent in a language that the respondent understands. It also requires that the advice be consistent with the respondent's ability to understand the information communicated. I believe that that was clearly complied with by giving her the English translation and the Polish interpreter. In fact, that's better because if she has questions regarding the medication, she can ask the interpreter about it. If she's given it in the Polish, you know, she may or may not ask any further questions about it. In 3-204, again, shall be provided in the language which they understand. And as I said, you know, the language assistant clearly states, you know, providing the interpreter is sufficient. So I think, you know, that directs how the person can understand those two prior sections. I attended a seminar in Canada before out-of-state travel or out-of-country travel was considered inappropriate. And an appellate judge from Canada said that it's a bilingual country. And all their opinions, including as well as their statutes, are written both in French and in English. And he suggested that when they wrote an opinion, the opinion written by the clerks were written in the language of the loser, which was then translated into the language if the winner happened to be a different one, fine. But the point was is that whatever the language was of the loser, the opinion was written so that the loser would understand in his own language, the idiom of his own language, the nuance of his own language, would be more easily understood than being concerned with the winner. And so when you were making these comments, they made some sense, except that I think that the best solution is they're provided with something that's in English and then a translation thereof, so that the best of both worlds, the nuances of the translation plus the doctor who supposedly doesn't speak this foreign language, although if the doctor does speak the foreign language, then you don't necessarily need to have it in English as well. But it might behoove the State if we decide that it is necessary that they, consistent with the policies of Canada and a bilingual country, to give it in both languages, so that an English-speaking interpreter who's going to now talk to the person in whatever language it is, has two references, because it is rather interesting, as the judge pointed out, justice pointed out, there are nuances between the translations that you would not normally understand if you only got one opinion, but having both in front of you, and if you can read both, you will actually learn things that you didn't or wouldn't otherwise. So, that's just an observation. It won't necessarily appear in the opinion or whatever we, you know, draft. I know I'm well over time, but if I could address that just briefly. Sure. In 3-204, there's a specific exemption for providing both the petition and the court orders in the foreign language. This is an English-speaking language. There are a number of dialects, and Polish and Spanish are the predominant ones in this area, but certainly someone who speaks Swahili is not any less entitled to understand what's going on than, you know, the more dominant foreign languages. I would also, I can't remember my other points, so if you're, do your honors have any further questions? Okay, thank you very much. Thank you. Ms. Krasuski. The purpose of the statute here was not achieved. Ms. G did not have the opportunity, she was not given full information about the medications. She testified, the medication will make me happy, and the doctor testified that's what the doctor told Ms. G, but that's all she told her. Her testimony was it'll help with insomnia, it'll help her tearfulness and sadness. What about counsel's argument, the distinctions between this case and Nicholas L, where in this case there was a question by the court on the record, are there any issues concerning notice or, forget the exact language from the record, do you know the record? That was asked on the record and the answer was no, that she understood. As I said, the case law on section 2-102 states that there's, it's not a question of prejudice, harmless error, waiver, it's strict compliance. Well, strict compliance, correct. However, even strict compliance of a statutory requirement can be waived in certain circumstances, just like a constitutional right can be waived, a knowing waiver. I don't see there was waiver here. I don't see that the state argued waiver. The state argued what occurred, the arrangement that occurred is sufficient, and if it's not sufficient, there was harmless error. Now, going back to whether the purpose of the statute was fully achieved, it was not, because Ms. G did not have full information. She only understood what her doctor told her, which was this will make you happy. And based on that information, she said, no, I can make myself happy in other ways. I don't need medication to do that. And so here we see the importance of the written information. The written information could list all of the benefits, all of the benefits that the doctor testified to, and that could have helped Ms. G make a different decision. She understood, oh, this treats delusions and paranoia and irritability. Doctors may verbally inform their patients about medication, and they may sugarcoat the information. But the written information, the purpose is that the respondent be fully informed, and that's how the written information achieves that purpose. Now, to go, the state is saying that going over the information with the translator is sufficient and better. Well, because Ms. G could have asked the interpreter questions, is an interpreter qualified to answer questions about medication? A doctor is qualified to answer those questions. And to say that she could talk to the interpreter when she chose to, that's shifting the burden on her to actually talk to the interpreter. And the case law shows that one court I believe in, this court, said it's common that respondents don't want to talk to the doctors. That's why it's even more incumbent for the respondent to have the information. Does not the statute require that the writing be capable of comprehension by the client? Yes, that it be to the extent that the respondent... Is there some sort of universal common denominator, or are these reports or informational memos set at different levels, like K through 5, 5 through high school, post high school, MA? Because I've read some of these things, and they don't make too much sense to me, and I'm not a Ph.D., but I'm a J.D. And so the question I have to you is, what level of writing is supposed to be directed at your client if your client is who you know her to be? In other words, do you have on behalf of your client the right to argue that this is either too beneath her level of intellectual experience, or that it's far above it, and it should be brought down so that she can understand what it says? Because if you start talking about fibromyalgia as opposed to pain in the joints, in other words, if you use medical terms to relate to things that a layman might understand somewhat differently, like cramps, pains, aches, sleepiness, as opposed to narcosis, I think it is, what do you think is necessary relative to this document that's supposed to give your client an education as to what she is supposed to be weighing so that she'll understand it? Well, in this case, the issue is not level of complexity about the information, it's the language that it's in. So had she gotten information in Polish, that would have been sufficient. Now, I'm not sure that totally answers the question, because I'm not sure I understand the question, but I did read that medical information should be provided at about a sixth to seventh grade level. That's what the National Institutes of Health say, and that should be understandable to most people. But in this case, we're not talking about that. We're talking about the language. So English was beyond her ability to understand. The capable of understanding will be for the next case as to whether or not it is at that level. Well, I suppose that could arise, but I think if the facility understands this person speaks Polish, I will give the information in Polish, that's consistent with their capability of understanding, and they would have met their burden. And the court has not required that the person actually understand it, because the person may not read the information. Now, about the state's argument about that services must be provided, reasonable efforts must be made to provide services in a language the person understands. Services is not the written information. Services refers to care and treatment, including psychotropic medication. It could include therapy and so on. So that's a different question here. And also, I just want to make one point, that there's a question of whether Ms. G's attorney had pointed out the error ahead of time. Would he be helping the state meet its burden? Would he be helping the state in that case? And again, the case law is clear. There's no waiver, harmless error analysis, and there's a requirement for strict compliance. So for those reasons, we ask respectfully that this court reverse the trial court order. Any other questions? Thank you. We'll take the case under advisement. Court's adjourned. Thank you.